QUESTION: May a board of county commissioners levy and collect ad valorem taxes within a municipal service taxing or benefit unit created under s. 125.01(1)(q), F.S. (1974 Supp.), pursuant to Ch. 75-63, Laws of Florida, (s. 125.01(1)(r), F.S. 1975), without an approving referendum election of the electors within such district?
SUMMARY: County governing boards may establish municipal service units in unincorporated areas and levy taxes to support such units. No referendum is required for approval of such tax levy. You have called to my attention the amendment of s. 125.01(1)(r), F.S. (1974 Supp.), by Ch. 75-63, Laws of Florida, effective June 4, 1975, stating "[t]here shall be no referendum required for the levy by a county of ad valorem taxes both for county purposes and for the providing of municipal services within any municipal service taxing unit," created under s. 125.01(1)(q), F.S. (1974 Supp.). Also see s. 200.071(3), F.S. (1974 Supp.). As you have noted, AGO's 072-162 and 075-24, directed to former statutes, have fully charted the constitutional area which Ch. 75-63 attempts to cover, so far as it expressly amends the statute to permit levy by a county of variable tax rates up to 10 mills within specific "units" of its unincorporated area without a vote of the electors within the unit. The conclusion in the cited opinions in favor of referendum under former statutes was, as you state, based expressly on the apparent constitutional requirement and the primary rule of statutory construction that no conflicting statutory effect should be inferred in absence of explicit legislative expression. The statute is now explicit. Your request is for concurrence or advice as to your expressed preliminary view that the current amendment brings the statute into direct conflict with the requirement for referendum upon all special district millages under Art. VII, s. 9(b), State Const. Any categorical opinion on the constitutionality of this legislative enactment must of course be reserved for the judiciary. In your determination of the issues raised before the Broward County Commission, consideration must of course be given to those provisions of the charter adopted by affirmative vote of the electors of your county on November 5, 1974, vesting in its government, in addition to general county powers, "all necessary powers to accomplish municipal purposes within the unincorporated areas of the county through the creation of special municipal taxing units with independent budgets." Sections 1.04 and 8.05, Charter of Broward County. The question of constitutional constraints on the exercise of such powers within unincorporated areas under other similar charter provisions appears to be complicated by the hybrid status of a charter government as a city-county government within those areas. Cf. Volusia County v. Dickinson, 269 So.2d 9 (Fla. 1972); AGO 074- 145. I am sure also that you will be guided by any judicial expressions which may ensue in the case of William J. Alsdorf, et al. v. Broward County, now pending on appeal in the Florida Supreme Court (No. 47,566), in which the trial court held that Art. VIII, s. 1, State Const., requires implementation such as that exemplified by the act in question and statutes which it amends. Aside from charter considerations, and in accord with the legislative "whereas" clauses for this bill, I would like also to affirm wholeheartedly the will of the people in adopting in the 1968 Constitution specified constitutional tax rate limitations, and in expressly prohibiting the use of county taxes to render services for the exclusive benefit of unincorporated area residents. Article VII, s. 9, and Art. VIII, s. 1(h), State Const. Also see s. 1.04, Broward County Charter. Such use was already unlawful under other constitutional provisions applied in earlier Florida cases cited in opinions, supra. I would also note that the Florida court has applied these constitutional constraints in ways not always meeting the demands of those asserting double taxation. City of St. Petersburg v. Briley, 239 So.2d 817 (Fla. 1970); Burke v. Charlotte County, 286 So.2d 199 (Fla. 1973). The courts will also ultimately resolve the question of whether there is a "constitutional distinction between a special district and a municipal service taxing unit," (Emphasis supplied.) as stated in the bill. Until that time, the statutory waiver of referendum for all such taxes contained in amended s. 125.01(1)(r), supra, remains clothed with all presumptions attaching to a legislative act. It is, of course, elemental that a duly enacted statute must be presumed to be valid and must be given effect until it is judicially declared invalid or inoperative in proper legal proceedings. White v. Crandon, 156 So. 303 (Fla. 1934); Evans v. Hillsborough County, 186 So. 193 (Fla. 1938). In sum, ss.125.01(1)(q) and (r) and 200.071(3), F.S. (1974 Supp.), as amended by and read with Ch. 75-63, Laws of Florida, are presumptively valid and the several county governing bodies are empowered thereby to establish municipal service taxing or benefit units for any part or all of the unincorporated area of the county for the purpose of providing the facilities and services therein specified and to levy and collect taxes both for county purposes and for providing such municipal facilities and services within such municipal service taxing units. Chapter 75-63 explicitly amends s. 125.01(1)(r) to authorize the levy and collection of such taxes for such purposes without an approving referendum vote of the electors of such duly established municipal service taxing units, and impliedly modifies ss. 125.01(1)(q) and 200.071 to that extent so that no referendum is required by law to levy the additional taxes within the limits fixed for municipal purposes within such municipal service taxing units under Art. VII, s. 9(b), State Constitution.